# United States District Court

### DISTRICT OF DELAWARE

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Premises known as
████████████ Street
Wilmington, DE 19801

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT    *Redacted*

CASE NUMBER: 05-74M-MPT

**REDACTED**

I, __Special Agent Mark McHugh__, being duly sworn depose and say: I am a(n) __DEA Special Agent__ and have reason to believe that

____ on the person of or _x_ on the property or premises known as (name, description and/or location)

████████ Street, Wilmington, DE 19801

in the _____ District of _____ Delaware _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B, which is incorporated herein by reference,

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rule of Criminal Procedure)

property that constitutes evidence of the commission of a criminal offense, the fruits of crime and things criminally possessed and property designed and intended for use and which has been used as a means of committing a criminal offense.

The facts to support a finding of Probable Cause are as follows:

See attached affidavit of SA McHugh, which is incorporated herein by reference.

Continued on the attached sheets and made a part hereof.   _X_ Yes ___ No

Signature of Affiant
Special Agent Mark T. McHugh

Sworn to before me, and subscribed in my presence
**April 15, 2005**                            at    **Wilmington, Delaware**
Date                                                City and State
Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware
Name and Title of Judicial Officer                  Signature of Judicial Officer

Redacted

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | MAG. NO. 05- 74 -M |
| : | |
| PREMISES LOCATED AT : | |
| ▮▮▮▮▮▮▮▮ STREET : | |
| WILMINGTON, DE 19801 : | |

### AFFIDAVIT

I, Special Agent Mark T McHugh, being duly sworn, deposes and says:

1. I am a Special Agent of the U.S. Drug Enforcement Administration (hereafter "DEA") and have been assigned to the Philadelphia Division's Wilmington Resident Office in Wilmington, Delaware since July 2002.

2. I have been a DEA Special Agent for the last nine and a half years. During that time, I have participated in numerous investigations into the unlawful distribution of narcotics in violation of Title 21 of the United States Code. During the course of these investigations, I have conducted or participated in physical and electronic surveillance, undercover transactions, the execution of search warrants, debriefing of informants, interviews of witnesses, reviewed tape recorded conversations involving drug trafficking activities, analyzed telephone toll records and records of drug traffickers. Through my training, education and experience, I have become familiar with methods in which illegal drugs are imported, manufactured and distributed, methods of payment for such drugs and methods used by drug traffickers to avoid law enforcement detection including methods used to disguise the source and illegal nature of drug proceeds.

3. My present duties at DEA include investigating narcotics traffickers, seizing narcotics and identifying and seizing assets representing proceeds of narcotics trafficking.

4. The information contained in this affidavit is based upon but not limited to:

       a. the general experience in narcotics investigations of law enforcement officers who have participated in this investigation;

       b. my own observations and the information and observations of other law enforcement authorities involved in this investigation;

       c. information provided by cooperating sources;

       d. records of government agencies;

       e. the seizure of narcotics; and

       f. post-Miranda statements provided by the accused.

This Affidavit is submitted in support of a search warrant for the residence located at ▓▓▓▓▓▓▓, Wilmington, Delaware 19801 and to seize drugs, documents and United States currency as fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Section 846 and 841(a)(1) *(conspiracy to distribute controlled substances and distribution of controlled substances respectively)*, as more fully set forth below and listed on Attachment B. The premises to be searched are more particularly described in Attachment A.

## PROBABLE CAUSE

1) During the fourth week of March 2005, law enforcement officers assigned to the Wilmington Police Department's Drug, Organized Crime and Vice Division received information from a past proven reliable confidential informant (hereafter CI#1) regarding the illegal heroin distribution activities of a subject identified as ▓▓▓ RAMSEUR, aka "BONES", DOB: ▓▓▓▓.

2) CI#1 advised Wilmington Vice Detectives Thomas Looney and Paul Ciber that RAMSEUR was delivering heroin to the "RIVERSIDE" area of Wilmington, Delaware, for distribution in the early morning hours. The CI further advised that RAMSEUR drove a black Chrysler Concord bearing Delaware registration ▓▓▓▓. The CI further advised that Ramseur would leave a residence located at ▓▓▓▓▓▓▓ STREET, Wilmington, Delaware in the early morning hours with heroin and deliver it to a residence in RIVERSIDE. Detectives Looney and Ciber responded to the 2500 block of Thatcher Street and observed a black Chrylser Concord bearing Delaware registration ▓▓▓▓ parked in front of ▓▓▓▓▓▓▓ STREET.

3) During the second week in April 2005, Detectives Looney and Ciber were advised by another confidential informant (hereafter CI#2) that RAMSEUR was delivering heroin to the RIVERSIDE area. CI#2 also advised that RAMSEUR would respond to a house on THATCHER STREET in Wilmington and pick up the heroin in the early morning hours. CI#2 also told Detectives Looney and Ciber that RAMSEUR was currently driving a rental car with a New Jersey registration.

4) In the early morning hours on April 15, 2005, members the Wilmington Police Department's Drug, Organized Crime and Vice Division established surveillance at ▮▮▮▮ STREET. At approximately 8:05ams, Detective Jeff Silvers observed a black male exit the rear of ▮▮▮▮ STREET and directly enter the driver's side of a silver Dodge Neon bearing New Jersey registration ▮▮▮▮ that was parked directly behind ▮▮▮▮ STREET in the rear alley. Detective Silvers advised assisting units which responded into the area. The black male driver, backed the Dodge Neon down the alley and proceeded eastbound on 26th Street.

5) Responding units observed the silver Dodge Neon turn south on Northeast Boulevard from 26th Street at a high rate of speed. As the vehicle turned south on Northeast Boulevard, Detective Ciber observed the driver and positively identified him as RAMSEUR. Pursuant to a prior check of Delaware Motor Vehicle records by detectives via DELJIS, RAMSEUR's drivers license was known to be suspended.

6) At that time, Detectives Looney and Ciber activated their law enforcement vehcile's audible and visual emergency equipment in an attempt to conduct a traffic stop on RAMSEUR's vehicle. RAMSEUR refused to pull over and continued south on Northeast Boulevard at an excessive rate of speed in violation of Delaware highway safety laws.

7) RAMSEUR fled south to the 12th Street Bridge. Detectives Looney and Ciber observed RAMSEUR exit the driver's seat of the vehicle carrying a black plastic bag in both hands and run to the west side of the bridge. As RAMSEUR exited the vehicle, the silver Dodge Neon continued traveling south on Northeast Boulevard over the bridge. RAMSEUR then jumped over a metal guard rail onto the pedestrian walkway on the west side of the bridge. RAMSEUR was observed leaning over the bridge and tearing open the black plastic bag while emptying its contents into the water below. After a brief struggle, Detectives Looney and Ciber placed RAMSEUR into custody.

8) Immediately after placing RAMSEUR into custody, Detective Ciber looked over the bridge and observed the black plastic bag floating in the river and packages of heroin coming out of the bag. The wind and current caused the plastic bag and packages of heroin to float east. Detective Ciber monitored the location of the packages while a Wilmington Fire Department marine unit was contacted.
    12)
9) WPD Detectives Taylor and Leary subsequently boarded the Fire Department marine unit and recovered approximately 34 "bundles" of heroin from the river in the area where the heroin packages were last observed floating. Each "bundle" of heroin contained approximately 13 small heat-sealed bags of suspected heroin which were held together

with small rubber bands. Each small heat-sealed bag contained a white powdery substance and blue wax paper stamped "VERSACE" for a total of approximately 442 bags. Detective Looney subsequently field tested the white powder from one of the small heat-sealed bags which indicated positive for heroin.

10) Detective Looney subsequently advised RAMSEUR as to his Miranda Rights and RAMSEUR acknowledged that he did have a room at ▮▮▮▮▮▮▮▮▮ STREET. Detectives responded to ▮▮▮▮▮▮▮▮▮ STREET. At that time, an individual identified as ▮▮▮▮▮▮▮▮▮ answered the door. ▮▮▮▮▮▮ advised Detective Looney that that he lived at the residence and further advised that "BONES", a nickname known to refer to RAMSEUR, had just left the residence. ▮▮▮▮▮▮ further advised that he rents a room to RAMSEUR. Thereafter, the residence was secured pending search warrant.

11) RAMSEUR's room is located on the second floor of ▮▮▮▮▮▮▮▮▮ Street. The residence at ▮▮▮▮▮▮▮▮▮ Street has a single, common entrance. Based on my training and experience, it is my belief that evidence of narcotics trafficking may be found anywhere within a home in which a drug trafficker is living.

12) Based upon the collective training and experience of both your Affiant and participating Agents and Officers, your Affiant knows and therefore avers:

   a. that large scale narcotics traffickers often keep on hand currency in order to maintain and finance their ongoing narcotics business;

   b. that narcotics traffickers commonly maintain in their possession, or on their persons, firearms and other weapons which they use to protect and secure their product and proceeds from their trafficking;

   c. that it is common for narcotics traffickers to secrete contraband, proceeds of narcotics sales, and records of narcotics transactions in safes and secure locations within their residences, or those of their friends and/or associates, their businesses and/or other locations over which they maintain dominion and control for ready access and to conceal them from law enforcement authorities;

   d. that it is common for persons involved in narcotics trafficking to maintain evidence pertaining to obtaining, secreting, transferring, concealing and or expending narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, and other items of value and/or proceeds of drug transactions, as well as books, records, invoices, receipts, records of real estate transactions, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations over which they maintain dominion and control;

e.  that narcotics traffickers commonly maintain addresses and/or pager and/or telephone numbers in books or papers which reflect the names, addresses and/or pager and/or telephone numbers of their associates in their trafficking activities;

f.  that narcotics traffickers commonly communicate with their sources of supply, customers and associates via pager and/or cellular telephone;

g.  that narcotics traffickers take or cause to be taken photographs of themselves, their associates, their possessions and their product, and that such photographs are usually maintained in their possession or in their residences;

h.  that courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including narcotics trafficking;

i.  that narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation, ordering, sale and distribution of controlled substances, and that these documents and records are maintained where the traffickers have ready access to them.

WHEREFORE, your Affiant believes, and therefore avers, that based on the foregoing, probable cause exists to believe that evidence of drug trafficking; that is, narcotics, firearms, documents and other fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 846 and 841(a)(1) is present at ██████████ Street, Wilmington, Delaware and therefore probable cause exists for the search of the premises described in Attachment A. By this application, your Affiant is requesting authority to search the subject premises for the items set forth and described in Attachment B. Your Affiant, having signed this Affidavit under oath, as to all assertions and allegations contained herein, states that its contents are true and correct to the best of his knowledge, information, and belief.

_____
MARK T. MCHUGH
*Special Agent, Drug Enforcement Administration*

Sworn to and subscribed before
me this 15th day of April, 2005.

_____
HONORABLE ~~KENT JORDAN~~
United States ~~District Court~~ Judge
       Magistrate

**ATTACHMENT "A"**
*DESCRIPTION OF PREMISES TO BE SEARCHED*

The premises located at ███████ Street, Wilmington, Delaware is described as a two story single family residence (attached row home) with an all brick front. The residence has a green front door with the numerals ███ attached in raised green paint with white storm door and rust colored mailbox on the left side of the door. The residence is located on in ███████ of Thatcher Street on the east side of the street between ███ and ███ Streets in Wilmington, Delaware.

## ATTACHMENT "B"
*ITEMS TO BE SEIZED*

Your Affiant, therefore, prays that a Search and Seizure Warrant be issued, authorizing him, with the necessary and proper assistance, to:

1. Enter and search the premises/vehicles as completely described above and seize:

2. Narcotics (including but not limited to powder and crack cocaine) coca leaves, cocaine, ecgonine and their salts, isomers, derivatives and the salts of isomers and derivatives, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine and paraphernalia used to measure, package and cut narcotics;

3. Heroin and any opiate derivatives, their salts, isomers and salts of isomers;

4. Marijuana, including all parts of the plant Cannabis Sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin;

5. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation, ordering, sale and distribution of narcotics;

6. United States currency and other proceeds of drug sales; financial instruments, such as cashier's checks, money orders, wire transfer receipts, ledger sheets, checkbooks, passbooks, safe deposit keys and other documents of financial record which evidence the obtaining, transfer, exchange, transportation and/or expenditure and/or concealment of large sums of money; precious metals, jewelry, and other items of value, as well as evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money;

7. Ledgers, address books and directories and telephone numbers in books or papers which reflect the names, addresses and telephone numbers of sources, customers and co-conspirators;

8. Communications devices used in furtherance of narcotics trafficking; specifically, pagers and cellular telephones;

9. Indicia of occupancy, residency, and/or ownership of the premises described; including but not limited to utility and telephone bills, and canceled envelopes.

10. Open and search any safes, boxes, bags, compartments or thing in the nature

thereof, locked or unlocked found in or upon said premises, as described in the Attached Affidavit;

11. Firearms, ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons, and any records or receipts pertaining to firearms and ammunition found on said premises;

12. Photographs, including still photos, negatives, video tapes, films, undeveloped film, and the contents therein, slides, in particular photographs of JOHNSON and other co-conspirators handling and possessing illegal drugs/drug paraphernalia, weapons/firearms, and United States Currency;

13. Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, computer software, tapes, discs, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment.